OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Walter M. Hughes, appeals from his conviction on one count of menacing following a jury trial in the Portage County Municipal Court, Ravenna Division. For the following reasons, we affirm the judgment of the trial court.
On June 28, 1999, appellant was charged with one count of menacing in violation of R.C. 2903.22. He entered a plea of not guilty, and the trial court appointed counsel to represent him.
The matter came on for a jury trial on November 8, 1999. The first person to testify was the victim, Arnetta Pellegrini ("Pellegrini"). She stated that on June 25, 1999, she and her two daughters were walking to the mailboxes in front of their apartment complex when appellant suddenly confronted them. According to Pellegrini, she immediately handed her seven-month-old grandchild, whom she had been carrying in her arms, to one of her daughters while the other daughter called the police. Pellegrini then told the jury that appellant began walking in her direction and telling her that she was going to pay for testifying against him in a prior criminal trial.
When appellant approached within six feet of her, Pellegrini warned him that if he touched her, she would have him arrested. In response, appellant told Pellegrini that "he wouldn't have to touch [her] because he knowed [sic] how to hurt [her]." At that time, appellant's wife intervened and led appellant away from the scene. In total, the incident lasted approximately three to four minutes and was corroborated by the testimony of three other witnesses at trial.
Pellegrini related that appellant's actions frightened her because she had testified against him in a prior criminal action. Based on this, she was afraid appellant may try to physically hurt her and/or that he may hurt her daughters and grandchild in retaliation for her testimony.
Appellant was the only person called on his behalf during the defense's case-in-chief. He claimed that on the day in question, he and his wife were at a friend's apartment in the same complex in which Pellegrini lived. According to appellant, sometime in the late afternoon, Mona Lambert ("Lambert") entered the apartment and gave him and his wife a "mean" look. Appellant informed Lambert that her daughter and Pellegrini were "going to pay for what they did to my wife and I[,]" referring to the prior criminal action. It was appellant's position that Lambert's daughter and Pellegrini had lied at his trial, and because of their perjured testimony, he was convicted of striking his wife.
Lambert left the apartment screaming that appellant had threatened her. As a result, appellant and his wife decided to leave and avoid further confrontation. While leaving, appellant explained that he was talking in a loud voice because his wife was partially deaf and sometimes had trouble understanding him. Appellant admitted that he had walked by Pellegrini on his way out, but claimed that he did not see her until after he had already passed her on the sidewalk. He maintained that he never made any overt gestures or verbal threats to Pellegrini.
Based on the evidence presented at trial, the jury found appellant guilty of menacing and the trial court sentenced him accordingly. From this decision, appellant filed a timely notice of appeal with this court. He now asserts the following single assignment of error for our review:
 "The conviction of the appellant was against the manifest weight and based on evidence that was insufficient as a matter of law."
Appellant argues that the jury's verdict was supported by insufficient evidence and was against the manifest weight of the evidence because he never threatened Pellegrini. While appellant admits that he may have said that he was going to make Pellegrini pay for testifying against him, he maintains that he was never going to physically assault Pellegrini or a member of her family. Rather, appellant claims he was going to let the legal system handle the matter. Appellant further states that the evidence produced at trial was unreliable and often contradictory concerning the events in question.
When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. See, also, State v.Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 16, 1994 Ohio App. LEXIS 5862.
On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387; State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported, at 4, 1998 Ohio App. LEXIS 5999; Schlee at 14-15.
"[T]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
To convict appellant of menacing, the state was required to prove that appellant knowingly caused Pellegrini to believe that he was going to cause physical harm to her or a member of her immediate family. R.C.2903.22.
The record before this court contains sufficient evidence which, when viewed in a light most favorable to the prosecution, would allow any trier of fact to find all of the essential elements of menacing beyond a reasonable doubt. First, appellant candidly admits that he was going to make Pellegrini "pay" for her testimony in the prior criminal action. However, appellant claims that when he made this statement, he was referring to a legal action and not physical violence. Despite this, he submits that Pellegrini had "carte blanche" to interpret those words in a any manner she saw fit.
Moreover, there was overwhelming evidence showing that appellant was yelling at Pellegrini while he approached to within approximately six feet of her. In addition, Pellegrini testified that appellant's actions frightened her because she felt that he was going to harm her or one of her family members. This testimony, if believed, was sufficient to sustain appellant's conviction for menacing.
As for whether his conviction was against the manifest weight of the evidence, appellant essentially argues that his version of the incident was correct, and that the other witnesses who testified provided conflicting accounts and should not, therefore, be believed. We disagree.
While there may be minor discrepancies in the testimony concerning the length of the tirade or exactly what was said, each of the prosecution's witnesses, except for one, who did not actually see the incident and only testified as to Pellegrini's demeanor shortly thereafter, testified to the following: (1) that appellant was visibly angry; (2) that appellant threatened Pellegrini; (3) that appellant walked toward Pellegrini; and (4) that appellant stopped in close proximity to her. Appellant, nevertheless, claims that he was not angry and was only speaking in an elevated voice so that his wife could hear him. Furthermore, he maintains that he never even saw Pellegrini until after he had passed by her while leaving.
From the record, it is obvious that there was some tension between appellant and Pellegrini. Appellant repeatedly voiced his displeasure with Pellegrini's testimony given at the previous trial. However, while appellant challenges the credibility of Pellegrini and the other witnesses who testified against him, assessing the credibility of a witness is left to the sound discretion of the trier of fact. State v. Burrier (June 16, 2000), Geauga App. No. 98-G-2126, unreported, at 21, 2000 Ohio App. LEXIS 2665. Here, the jury clearly chose to believe the testimony of Pellegrini and the others as opposed to appellant.
After reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction for menacing. The weight of much of the testimony presented rested on the credibility of the witnesses. However, the credibility of the witnesses were critical issues for the jury to decide. This court will not disturb those findings on appeal unless the testimony in question was completely lacking in credibility, which, in the case at bar, it was not.
Based on the forgoing analysis, appellant's sole assignment of error is without merit. As a result, the judgment of the trial court is affirmed.
 ____________________________________ DONALD R. FORD, PRESIDING JUDGE
CHRISTLEY, J., O'NEILL, J., concur.